2-16-0293. People of the State of Illinois, I give the floor to the Crystal Jenkins of the State of Columbus. On behalf of the Department of Commerce, Mr. Lucas, Mr. Walker, and on behalf of the County of Abilene, Ms. Mary Beth Cummings. This is just dress rehearsal. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Okay, go ahead, Mr. Walker. Good afternoon. Good afternoon. May it please the Court, Counsel. Good afternoon, Your Honors. My name is Lucas Walker with the State Appellate Defender's Office. I represent Ms. Jenkins in this appeal, and we raise one issue. That is, we argue the trial court erred when it refused to tender Ms. Jenkins' non-IPI jury instruction number five, which would have informed the jury that a person can use reasonable force to try to prevent an unconstitutional entry by a police officer into that person's apartment if that entry is for purposes other than an arrest. It's an accurate statement of law. It's relevant to the case, and it is critical to Ms. Jenkins' defense, which is that she did not knowingly obstruct an authorized act, in this case the first pursuit arrest situation, but rather she had every reason to know the situation to be that which is described in this instruction, that being an unconstitutional entry by police officers in her apartment for purposes other than an arrest, specifically a nonconsensual warrantless search. And the standard's pretty low to have a jury instruction read for a defendant. All a defendant has to do is show that there is at least very slight evidence supporting the instruction being given. And there was plenty of evidence here to justify the giving of this instruction. I was going to ask, so your legal theory was that the officers here were necessarily searching until they found the person, this Brooks person they intended to arrest? And so therefore they didn't have the intent to arrest until they searched for him and found him? No, the theory here, Your Honor, is what matters is the knowledge of Jenkins in this situation. It's not what the officers knew they were doing or thought they were doing, and to the point I was making as far as evidence supporting this theory, Ms. Jenkins testifies she was in her apartment, 8 p.m. at night, sometimes in the living room watching TV, sometimes in the kitchen cooking dinner, when all of a sudden two officers enter the apartment yelling for Chubbs. They're not saying, Chubbs, you're under arrest, where are you? We just chased you. What do you think of that effect? It's Chubbs, Chubbs, Chubbs. Ms. Jenkins approaches the officers, demands a search warrant. The officers say, we don't have one. She says, well, you have to leave. She doesn't consent to the search. Now, our theory is also corroborated and supported by some of the state's evidence through Officer Ellis, who, by the way, this obstruction charge is related to, the blocking of him getting in further into the apartment, where Officer Ellis initially testified and told Ms. Jenkins we're here to arrest Brooks, but on cross-acknowledged in his report that he had written, the exact wording on page 169 of the reported proceedings, Jenkins engaged, ignored several orders to exit. I told him we saw Brooks enter, therefore we needed him out so we could safely perform a search. Nowhere in the report does it indicate that he told Ms. Jenkins anything about an arrest situation. Now, to be clear, we're not arguing the state did not present evidence supporting their theory. Obviously, Officer Ellis prior to that testified and told Ms. Jenkins we're there for an arrest. Where we are arguing is that there was sufficient evidence justifying the giving of this instruction, which would simply have ensured that the jury was instructed as to the full relevant gamut of law applicable to this situation. That didn't happen. And your argument is based upon this evidence, even though it may be slight, because she did hear them yelling for shoves, which would create an inference that they're looking for him to arrest him. But at the same time, maybe they were there just to search. And that's your position, that the jury should have gotten that instruction. Correct. But didn't you cover that in argument in the instructions? Otherwise, cover that situation? Wasn't that the argument? In closing argument, didn't Ms. Jenkins' lawyer argue that exact theory? As we acknowledge in our brief, the defense counsel, tribal counsel rather, certainly argued during closing argument this principle of law. Our argument in response to that is that arguments or statements of law during closing argument can be discarded. If it's not based on evidence, it can be discarded. The jury instructions actually tell the jury that. So this needs to be part of the jury instructions. If this court were to find it is sufficient for trial counsel to simply make statements of law during closing argument, and that takes care of an omitted jury instruction, that would open the door to a lot of problems. And it's obvious that it's just so well established, it's very obvious statements of law need to come from the court through jury instructions. And statements made during closing argument that can simply be discarded can't make up for that omission. Why didn't the state's instructions adequately inform the jury as to what the law was? I mean, didn't the state's instructions make clear that an unauthorized act that wasn't an arrest could be resisted? And isn't that what this was? Wasn't that the gist of the instruction that defense counsel offered, the non-IPI? It is true that non-IPI makes clear something that doesn't flow very logically from other instructions. That is, someone can actually resist, reasonably resist, the entry of a police officer into their home in certain situations. The instructions that were given did not mention that someone could actually resist that. In fact, to our argument, the instruction for, if the jury were to find that this was something that Ms. Jenkins knew to be an arrest situation, a first pursuit arrest, well, the instruction made clear that you cannot resist an arrest of yourself or a third person, regardless, in any situation. Even if it's ultimately unlawful, you just have to let it happen. It doesn't flow very logically from that instruction, that principle of law, that someone can actually resist an officer entering their home in certain situations. So this instruction needed to be given so the jury, if they did come to the conclusion that, you know, they decide, we believe Ms. Jenkins, we think maybe she did not know this to be a first pursuit situation, we do have to find she knowingly obstructed the performance of an authorized act. This looks more like she had every reason to think it may have been a search situation. But you can't resist an arrest situation. Why would she be able to obstruct them getting down the hallway? It's still something you probably can't do. If that question is in their mind, at the very least it leads to jury confusion. At the very worst, it leads to the wrong verdict, which, of course, is an unacceptable outcome. The jury instruction needed to be given, and the omission of it was not harmless beyond a reasonable doubt, which, by the way, is the standard, of course, the State needs to meet on appeal because this issue was fully preserved. Do we know, I don't want to get off the point too much, but do we even know why Chubbs was banned from the complex? We don't. So in Weir and the other cases, it's either a crime of violence or in Weir, a DUI, where if that person is not apprehended, it might pose an immediate risk to the public. We don't have any of that information here, correct? Correct. Here, the officers were... He's just loitering, or maybe he posed a threat to somebody in the apartment complex. We don't know. Well, all we know is, correct, all we do know is that the officers testified. We know he's not supposed to be there. He's banned from the premises. So they chased after him for a Class B criminal trespass and busted into Mrs. Jenkins' home at 8 p.m. at night to get this guy, who they also testified, but we see him about every month since April 2009. They had every reason to think they could catch up with him later down the road, not necessarily justifying entering into her home at that time. But that would answer the question. I guess ultimately what I've already said sort of satisfies the second point of this argument, which is it's not harmless beyond a reasonable doubt for the simple fact that there was enough evidence on Mrs. Jenkins' theory that she had reason to know this situation not to be the performance of an authorized act, but rather of a nonconsensual warrantless search and unconstitutional entry into her home. Was there evidence that she even knew that Mr. Brooks had been banned from the premises? I don't believe there was. I think the only evidence was that she had a child with Mr. Brooks. At one point, there was evidence that an officer testified. She said, I was protecting my baby daddy, something to that effect. She denied saying that. And again, our argument here is not arguing that the state did not present evidence to support their theory. Our argument is simply that Jenkins did, too, and Jenkins provided enough evidence to justify at least the jury being informed of the full gamut of applicable relevant and, we argue, critical law. So our request for relief here is a reversal of the obstruction conviction and a remand for any trial on that charge. Thank you. Thank you. Ms. Burns. Good afternoon. Good afternoon, Your Honor. My name is Mary Beth Burns, and I represent the people of the state of Illinois. We come before you this afternoon to respectfully ask you to affirm the defendant's conviction. In looking at the instruction that the defense requested and was declined, it has to be understood that the instruction is based on two presuppositions. The first one is that the officers were not trying to make an arrest, and the other one is that they were making an unconstitutional entry. Whether they were making an arrest or not was a factual question, but whether the entry was constitutional or not is a matter of law and which should have been presented to the trial court. I believe the trial court, in declining, said it was either too broad or too narrow. I honestly cannot recall what the trial court said during the course of the instructions, but I think when we look at the actual judgment, what we're looking at is an instruction that was not appropriate to a jury. The defendant's theory, however, was adequately presented by other instructions that she had presented and that were given, including the language of the Fourth Amendment itself. So clearly her overall theory was that the officer simply did not have a right to be there. However... Well, her theory was that she didn't know that they had a right to be there, or that she didn't know they were in hot pursuit. But the record doesn't really reflect that because when they followed Mr. Brooks into her... Well, if that instruction had been, if the defense instruction had been given, there would have been an argument based upon the instruction, wouldn't there have been? I'm sorry? If the defense request for the non-IPI instruction had been given, that would have provided an opportunity to make the argument. I apologize for being dense. I'm not following. I'm sorry. The defendant was, the defendant didn't know that the police were performing an authorized act. I think what I've tried, and we had a moot on this in the office the other day, I've tried very hard not to use legal language. I think it isn't a matter of whether she knew it was authorized. I think what we're trying to determine, what we're asking the jury to determine, was were they coming to make an arrest? Because if they were coming to make an arrest, she was not entitled to obstruct them. She had to know that they were coming to make an arrest. And the record would indicate that she did, because they were following Mr. Brooks from the second floor. We do not know how he entered the third floor apartment of the defendant, but the door was open, he went through it, Officer Pesci put his foot in to stop the door from closing, and they went into the apartment threshold, calling out to Andre Brooks' nickname. It is unlikely that she would have thought there was going to be a search, rather than an arrest, when they were following him, calling his name. This isn't a matter that they intended to go looking for small items like drugs. They were looking for a person who they had just followed in, calling his name. If you're a layperson, how would you automatically assume that they are pursuing him for an arrest? For example, they're pursuing him because they want to talk to him. They're pursuing him because they think he just observed something, and maybe he doesn't want to be a rat. They want him to be a rat. That's my point. So how can a layperson, or how should a layperson, automatically assume that when they're pursuing you down a hallway, that it is for the purpose of an arrest, to the exclusion of all other purposes? I understand the question. Because I ask better questions than Mr. Burkett, that's why. I understand what you're saying, and I may be making an assumption. My assumption may be unfair because although the record of the actual trial in the evidence presented to the jury does not include why Mr. Brooks was banned, however, there was a Montgomery hearing on the possibility that Mr. Brooks might testify, and it talked about multiple priors, none of which were significant, but I want to say like small drug things or something. My sense is if he's banned and he's her baby mama, so I'm guessing she knows him, baby papa, whatever, I'm guessing she knows something about his life such that he has been in trouble before. So she has reason to believe if the police come running after him, calling his name, that they do want to arrest him. Well, that information was not before the jury. That's very true. So it's irrelevant to your argument here, isn't it? I think irrelevant is a strong word. No, I think, again. There's no bearing on your argument? Closer. I think, again, the problem with this case is that what we're discussing is an instruction that called for legal conclusion that I don't know was appropriate to give to a jury. If the instruction had been limited to whether the defendant knew whether they were or were not there to arrest him, I think that would be an appropriate instruction because, as Justice Jorgenson said, that may well be a matter of fact that may not be answered by the evidence that was presented to the jury. There were questions that were not asked to the jury. Like, why didn't they ask if he had a key or how he got in? I mean, when I was reading it, there were multiple things that I wish had been asked that I have to admit were not. And so there are things that we may not know. But we do know that whether something is an unconstitutional entry is a matter of law rather than a matter of fact. And so to the extent that the trial court did not give that instruction, but the trial court gave a number of other instructions, several of which were not IPI, which did perhaps answer Justice Jorgenson's question as to whether the jury instructed on whether she knew what was happening while the police were there. And our position is the trial court properly did not give this instruction, primarily because the instructions as a whole did tell the jurors what it was that the defendant was defending against. Her position was that she had no reason to know what the officers were doing, and that's why she said they had to leave since they didn't have a warrant. If the jurors believed other than that they were in fresh pursuit and therefore did not believe they needed a warrant, then they found her guilty. Had they believed otherwise, they would have found her not guilty. But the jury instructions taken as a whole provided the jurors everything they would have needed based on the evidence to make that determination. Do your honors have any other questions? Everything else is open. Thank you very much. Good afternoon. Thank you very much. Mr. Walker, your rebuttal. Just briefly, your honors, as to the jury instruction being a cause of the jury to make a legal determination, we argue that's not the case. It's asking the jury to determine the reasonableness of Ms. Jenkins' actions given the circumstances. And it's important to remember that this jury instruction is not going to be read in isolation from the other jury instructions. Rather, it's going to be in conjunction with the other jury instructions. So put in the proper context, the jury's not making any legal determination at all. What they're trying to determine is what Ms. Jenkins knew the situation to be. They're provided with different situations. They can decide which situation it was. If they are coming to the conclusion that, hey, she thought this was an unconstitutional injury, they need to understand that she could exercise reasonable force. Leaving that out of it just opens it up to potential confusion or potentially a wrong verdict, and that is a determination the jury would have to make given the case law here. If somebody is resisting a police officer from entering their apartment they believe to be an unconstitutional search, it's not per se great. It's not per se lawful. They have to exercise reasonable force. So it's another step that was even almost missing. And so this jury instruction does not do anything but just cause the jury to determine the reasonableness of Ms. Jenkins' actions given the circumstances should they reach that point. And, again, it does go to not what objectively we can see is going on. We can't dispute there was a fresh pursuit situation. And the reason we can't is because there was no other witnesses in the hallway testifying. We have the officer's testimony. So we're not arguing that that didn't occur. We're simply arguing what did Ms. Jenkins have reason to know and was there sufficient evidence to show that that justifies the giving of this jury instruction. We know that's the case as far as the defendant's knowledge mattering. We look at the language in People v. Villarreal where there was a fresh pursuit arrest situation. Defendants tried to obstruct the officer from getting in and it was found they could not do that because the officer clearly stated to everybody that person is under arrest. The language from that case says the defendants knew that the officer's sole purpose for entering the house was to complete an arrest. Therefore, defendants were precluded from resisting the officer's attempt to enter the residence. Here it's obviously distinguishable. As we've indicated, we're not going to keep going over it. There's sufficient evidence to show Ms. Jenkins could not have known. I think that would, unless Your Honors have any more questions. Thank you for your time. Thank you both counsel for your arguments this afternoon. The court will take the matter under advisement and render a decision in due course. Court is adjourned for today. Thank you.